UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**SIHAM E. LEMZABI**,

Plaintiff,

– against –

**RAMSEY TUTORING LLC d/b/a SMITH STREET WORKSHOP**,

Defendant.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

1:25-CV-5137 (AMD) (PCG)

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff brings this action against the defendant for discrimination and retaliation arising out of her employment at the defendant's preschool. Before the Court is the defendant's motion to compel arbitration. (ECF No. 8.) For the reasons below, the motion is granted.

## BACKGROUND

The following facts are drawn from the complaint, exhibits, and declarations submitted in this case.

The plaintiff was a French teacher at the defendant's preschool in Brooklyn, New York, from September 1, 2022 to November 19, 2024. (ECF No. 1 ¶¶ 12–13, 34.) Before she started, the defendant sent an offer letter to the plaintiff, which she signed on August 26, 2022. (ECF No. 8-2 at 9.) The letter, a copy of which was attached to the defendant's motion, stated that the job offer was contingent upon, among other things, execution of an "employment/non compete/confidentiality agreement." (*Id.* at 7.) The defendant works with Outsourcing, LLC, "a Paychex company," for payroll processing and onboarding services. (*Id.* ¶ 2.) According to the

defendant, Oasis gives new employees an electronic link to get access to onboarding materials. (ECF No. 8-3 ¶ 7.) Employees must enter personal details, including an employee PIN number, date of birth, address, and social security number to get access to the materials and sign the required onboarding documents. (*Id.*)

On September 8, 2022, the plaintiff appears to have electronically signed an agreement, sent by Oasis, titled "Employee Acknowledgments." (ECF No. 8-2 at 11–14.) The Employee Acknowledgements agreement includes a section titled "Dispute Resolution Agreement – Important, Please Read." (*Id.* at 12.) This section provides as follows: "Any dispute between you and Paychex or your Worksite Employer will be resolved exclusively through binding arbitration." (*Id.*) The Agreement defines "Worksite Employer" as "the business or organization you perform work for" and "Paychex" as "any Paychex affiliated company which may include Oasis Outsourcing, LLC, Paychex Business Solutions LLC, their subsidiaries, and other affiliates that have Paychex, Inc. as their ultimate parent company." (*Id.*) The agreement provides that some matters are not subject to arbitration, including unemployment claims, workers' compensation claims, "claims that by law cannot be subject to pre-dispute arbitration agreements (such as certain sexual harassment and sexual assault claims)," and administrative agency proceedings. (*Id.* at 13.) To accept the Employee Acknowledgments agreement, the plaintiff had to click on a button marked "Sign and Continue." (ECF No. 8-3 ¶ 11.) The defendant asserts that the onboarding system log shows that the plaintiff signed the agreement on September 8, 2022. (*Id.* ¶ 14(b).) The plaintiff claims that she did not sign the document or authorize anyone else to sign on her behalf, and that the signature is a "forgery" and "fraudulent." (ECF No. 10 at 3, 5.)

The plaintiff's complaint alleges that, from the start of her employment, multiple people treated her unfairly because of her race and national origin: her supervisor (ECF No. 1 ¶ 19), the lead teacher (*id.* ¶ 21), the then-Human Resources manager (*id.* ¶ 22), another associate teacher (*id.* ¶ 30), and the site director (*id.* ¶ 32), all of whom are "white and/or of European descent." She alleges that she complained about the discriminatory treatment and the lead teacher and Human Resources manager were hostile to her and retaliated against her. (*Id.* ¶¶ 20, 22–23.) The plaintiff further alleges that her coworker and friend, Keila Pote, also experienced race and national origin discrimination, was terminated for discriminatory reasons, and was retaliated against for complaining about the discrimination. (*Id.* ¶¶ 25–28.) The plaintiff alleges that she was terminated when the defendant's Chief Administrative Officer learned that the plaintiff was communicating with Pote, who had filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶¶ 35–39.)

Thereafter, the plaintiff filed a complaint with the EEOC and received a notice of right to sue on June 17, 2025. (*Id.* ¶¶ 5–7.) She filed this action on September 12, 2025, asserting six causes of action: (1) retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; (2) retaliation in violation of 42 U.S.C. Section 1981; (3) national origin discrimination in violation of the New York State Human Rights Law, Exec. L. § 296(1) ("NYSHRL"); (4) retaliation in violation of the NYSHRL; (5) national origin discrimination in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a) ("NYCHRL"); and (6) retaliation in violation of the NYCHRL. (ECF No. 1 ¶¶ 44–79.) The defendant now moves to compel arbitration. (ECF No. 8.)

## LEGAL STANDARD

Courts deciding motions to compel arbitration generally apply a standard "similar to that applicable for a motion for summary judgment." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 49 (2d Cir. 2022). On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002)). The court "must draw all reasonable inferences in favor of the non-moving party." *Id.*

"Allegations related to the question of whether the parties formed a valid arbitration agreement . . . are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012). The moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . . Once the moving party has met its burden, 'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" *Carvant Fin. LLC v. Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 394 (E.D.N.Y. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A declaration containing "conclusory" assertions or assertions "based on speculation" does not create a genuine issue of fact, *Barrows*, 36 F.4th at 51 (citation omitted), and "the nonmoving party cannot survive summary judgment by casting mere 'metaphysical doubt' upon the evidence produced by the moving party," *De Lemos v. All. Ground Int'l, LLC*, 821 F. Supp. 3d 313, 321 (E.D.N.Y. 2026) (citation omitted).

## DISCUSSION

Courts in this circuit apply a two-step test to determine whether a dispute is subject to an arbitration agreement. The first step is to determine whether a valid agreement to arbitrate

exists, a question that is resolved by state contract law. *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 24 (E.D.N.Y. 2023). "Ordinary principles of contract law guide the inquiry into whether an arbitration agreement was validly formed and whether the parties consented to arbitrate a particular dispute." *Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 113 (2d Cir. 2023). Like other contracts, an arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (citing *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). If the court finds a valid arbitration agreement exists, it then considers whether the parties' dispute is within its scope. *Alvarez*, 661 F. Supp. 3d at 24. When a court holds that an arbitration agreement is valid and the claims before it are arbitrable, it must stay the litigation and send the dispute to arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 477–78 (2024).

## I. Validity of the Arbitration Agreement

The defendants "bear the initial burden of showing that an agreement to arbitrate was made." *Palmer v. Starbucks Corp.*, 735 F. Supp. 3d 407, 416 (S.D.N.Y. 2024). "This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (emphasis in *Hines*). The defendant has met that burden here. The Dispute Resolution Agreement bears the plaintiff's electronic signature (ECF No. 8-3 at 11), which is an objective manifestation of her assent to the contract's terms. *See Fantastic Indus., Inc. v. Kryman*, No. 20-CV-2402, 2021 WL 2809979, at *3 (E.D.N.Y. July 6, 2021), *aff'd*, No. 21-1919, 2022 WL 2186951 (2d Cir. June 17, 2022); *Kutluca v. PQ New York Inc*., 266 F. Supp. 3d 691, 701 (S.D.N.Y. 2017) (holding that plaintiffs who did not recall clicking "I Accept" were bound to arbitration agreement where they could not have proceeded through the system without

accepting terms). Moreover, a promise of employment is sufficient consideration for an arbitration agreement. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 241 (S.D.N.Y. 2020), *objections overruled*, No. 10-CV-695, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021).

Because the defendant has met its burden, the burden shifts to the plaintiff to demonstrate a "substantial issue on the existence" of the agreement. *Hamrit v. Citigroup Glob. Mkts., Inc.*, No. 22-CV-10443, 2024 WL 1312254, at *5 (S.D.N.Y. Mar. 26, 2024) (citation omitted). "This requires [the plaintiff] to come forward 'with at least some evidence to substantiate [her] denial that an agreement had been made.'" *Palmer*, 735 F. Supp. 3d at 418 (quoting *Barrows*, 36 F.4th at 50). The plaintiff has not met this burden. A forged signature generally renders a contract void, *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003), but "the party claiming forgery has the burden of rebutting the presumption of authenticity of signatures." *Diaz v. Wanrong Trading Corp.*, 810 F. Supp. 3d 379, 391 (E.D.N.Y. 2025). Conclusory statements or mere assertions of forgery are insufficient. *Id.* There is no credible evidence in this case that the signature on the agreement was forged. On the contrary, the defendant attests that the plaintiff was required to enter personal details that only she was likely to know, including her social security number and employee PIN (ECF No. 8-3 ¶¶ 8–9), and that she could not have completed the required onboarding documents without signing the agreement (*id.* ¶ 11). The plaintiff does not explain how she could have completed the onboarding process without signing the agreement. Accordingly, the Court finds that a valid arbitration agreement exists.

## II. Scope of the Arbitration Agreement

"Under the [Federal Arbitration Act ("FAA")], as interpreted by the Supreme Court, the general presumption is that the issue of arbitrability should be resolved by the courts." *Alliance Bernstein Inv. Research & Mgmt.*, 445 F.3d 121, 125 (citing *First Options of Chicago, Inc. v.*

*Kaplan,* 514 U.S. 938, 944–45 (1995)). The defendant does not claim that the agreement delegates arbitrability issues to the arbitrator, and the Court does not see "clear and unmistakable" evidence that the parties intended to make such delegation. *See First Options of Chicago*, 514 U.S. at 946. Accordingly, the Court determines whether this dispute is within the scope of the Dispute Resolution Agreement.

The agreement states:

> This Agreement governs legal disputes between you and any Paychex-affiliated company which may include Oasis Outsourcing, LLC . . . (for convenience all these are referred to herein as "Paychex") or the business or organization you perform work for (your "Worksite Employer," which is an intended beneficiary of this Agreement) arising out of or in connection with your employment, application for employment, or separation from employment for which you are, were, or would be paid through Paychex. . . .
>
> To the greatest extent allowed by law, except as otherwise provided below, **any dispute between you and Paychex or your Worksite Employer will be resolved exclusively through binding arbitration.**

(ECF No. 8-2 at 12 (emphasis in agreement).) It then carves out from mandatory arbitration certain categories of claims:

> Unemployment claims; Workers' compensation claims; Claims that by law cannot be subject to pre-dispute arbitration agreements (such as certain sexual harassment and sexual assault claims); Administrative agency proceedings that by law are not subject to arbitration agreements (however, once the agency's proceedings are concluded if you pursue the matter further this Agreement will apply).

(*Id.* at 13.) The agreement expressly "survive[s] termination" of the plaintiff's employment. (*Id.* at 14.) The agreement is thus sufficiently broad to encompass this employment discrimination and retaliation dispute. *See Mildworm v. Ashcroft*, 200 F. Supp. 2d 171, 178 (E.D.N.Y. 2002) ("[C]ourts repeatedly have construed similar arbitration agreements broadly to encompass any

dispute arising out of the employment relationship, including employment discrimination claims.").

Accordingly, the Court grants the motion to compel arbitration.

### III. Staying the Action Pending Arbitration

Under the FAA, when a court grants a motion to compel arbitration and a party requests a stay of the action, the court must stay the action pending completion of the arbitration. 9 U.S.C. § 3 ("[T]he court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").

## CONCLUSION

For these reasons, the defendant's motion to compel arbitration is granted. The Clerk of Court is respectfully directed to stay this action pending arbitration. The Clerk of Court is also directed to close the case for administrative purposes only. A party may request to reopen the case within sixty days of any final arbitration award.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
August 11, 2026